**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

TREVOR MEEKS,                      )
                                   )
        Plaintiff,        )
                                   )
v.                                 )     Case No. CIV-17-085-RAW-KEW
                                   )
COMMISSIONER OF SOCIAL             )
SECURITY ADMINISTRATION,           )
                                   )
        Defendant.        )

**REPORT AND RECOMMENDATION**

Plaintiff Trevor Meeks (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. Claimant completed his high school education and one year of college. Claimant has worked in the past as a heat and air service person and a construction worker. Claimant alleges an inability to work beginning September 2, 2013 due to limitations resulting from scoliosis, fractured vertebrae, Grave's disease, vision problems with a right eye removal, hypertension, ear scarring, degenerative disc disease, a spinal injury, anxiety, and depression.

**Procedural History**

On July 3, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 18, 2016, Administrative Law Judge ("ALJ") James Bentley conducted an administrative hearing in McAlester, Oklahoma. On March 18, 2016, the ALJ issued an unfavorable decision. On January 11, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in failing to include a visual or mental limitation in the RFC.

**Consideration of Impairments in RFC**

In his decision, the ALJ determined Claimant suffered from the

severe impairments of degenerative disc disease of the cervical and lumbar spines, scoliosis, history of a cervical spine injury with C6 facet fracture, history of Grave's disease, right eye removal due to ocular melanoma, hypertension, generalized anxiety disorder, and major depressive disorder. (Tr. 22). The ALJ concluded that Claimant retained the RFC to perform light work except that he could occasionally balance, stoop, kneel, crouch, and crawl; due to vision limitations, Claimant should avoid unprotected heights and dangerous moving machinery; could perform no climbing of ladders or scaffolding; could perform no overhead work; due to mental issues, could have occasional contact with co-workers and supervisors; and could engage in frequent but not constant reaching, handling, and fingering with the left upper extremity. (Tr. 24).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of inspector/packer, cafeteria attendant, and cashier. (Tr. 29). As a result, the ALJ found Claimant was not disabled from September 2, 2013 through the date of the decision. Id.

Claimant contends the ALJ failed to include proper visual or mental limitations in the RFC. Claimant has no right eye. He suggests that the lack of an eye affects his depth perception and peripheral vision as "[a]nyone can cover one eye and see that depth perception, visual field, ability to see things quickly or avoid

fast moving people or machinery are dramatically affected because the person must constantly turn their head to see everything." Rather than adopt such anecdotal testing, this Court must examine the medical and vocational record.

Dr. Claire Horn, a reviewing consultative source, noted Claimant watched television, cooked simple meals and did household chores including dusting, dishes, and sweeping. He did laundry. His personal activities of daily living took longer. He drove around town and went out alone. Claimant shopped every two weeks. He reported difficulty with all posturals. If he walked 100 yards, he needed to rest all day. Although Dr. Horn noted Claimant had poor vision and a glass right eye, no visual limitations were found in Dr. Horn's assessment. (Tr. 73). Dr. Horn cited to the medical record, noting Claimant's back pain and imaging which suggested Claimant had narrowing and disc bulging but not herniation or compression. Id. Dr. Horn concluded Claimant could perform the exertional requirements for light work. (Tr. 72).

Similarly, Dr. Herbert Meites, also a reviewing consultative physician, found Claimant could perform similar activities of daily living as Dr. Horn. He also concluded Claimant could perform light work. (Tr. 96-97).

Claimant testified at the administrative hearing that he had a prosthetic eye in place after his right eye was removed due to

melanoma.  He stated that his equilibrium was "always out of kilter" due to his body attempting to compensate for being monocular. Claimant associated no other limitation to his eye loss.  (Tr. 53-54).

The ALJ included a limitation in the RFC for Claimant to avoid unprotected heights and dangerous moving machinery, perform no climbing of ladders or scaffolding or overhead work due to his visual limitations.  (Tr. 24).  The ALJ noted that Claimant was able to perform his past relevant work above substantial gainful levels for over a decade after his right eye was removed.  Moreover, the ALJ acknowledged that Claimant denied changes in his vision or problems associated with it upon examination in September of 2013 onward and had 20/20 vision in his left eye with correction.  (Tr. 26).

Additionally, in an isolated title to an argument and sentence within the briefing, Claimant states the ALJ failed to include all of his mental impairments in the hypothetical questioning of the vocational expert.  He does not develop this argument any further than to state it and, therefore, this Court is unable to address the argument on review.  See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012).[2]

---

[2] The ALJ did include limitations within the RFC attributable to Claimant's mental impairments.  He limited Claimant to only occasional

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ adequately addressed the basis for his RFC findings concerning Claimant's visual limitations. Most pertinent was

---

contact with co-workers and supervisors. (Tr. 24). This limitation and only this limitation is supported by the medical record in the consultative opinions of Dr. Burnard Pearce (Tr. 70-71) and Dr. Cynthia Kampschaefer. (Tr. 94-95).

Claimant's ability to work well after the eye loss. The functional limitation from this condition to which Claimant testified - an equilibrium problem - was specifically included within the RFC. Claimant provides anecdotal and unsubstantiated limitations from his vision condition which are not supported by the medical record or his own testimony.

Further, to the extent Claimant couches his argument in terms of an inadequate hypothetical question posed to the vocational expert, this Court finds the questions accurately reflected the limitations set forth in the RFC and supported by the medical record. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Claimant's proposed questions to include further vision limitations are not supported.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE